IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 8, 2016

## MICHAEL TYRONE GANT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 17954     Forest A. Durard, Jr., Judge**

---

**No. M2015-01566-CCA-R3-PC – Filed June 1, 2016**

---

The Petitioner, Michael Tyrone Gant, appeals the denial of his petition for post-conviction relief. He argues that he received ineffective assistance of counsel based on trial counsel's failure to present evidence on his behalf that would have established both his innocence and the victim's bias. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and D. KELLY THOMAS, JR., J., joined.

Brian C. Belden, Shelbyville, Tennessee, for the Petitioner, Michael Tyrone Gant.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Robert James Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On October 22, 2012, a Bedford County jury convicted the Petitioner of aggravated robbery, aggravated burglary, possession of a weapon by a convicted felon, and possession of a firearm during the commission of a dangerous felony, and the trial court imposed an effective sentence of forty-eight years' incarceration. See State v. Michael Tyrone Gant, No. M2012-02727-CCA-R3-CD, 2013 WL 5873278, at *1 (Tenn. Crim. App. Oct. 30, 2013), perm. app. denied (Tenn. Mar. 5, 2014). This court affirmed the Petitioner's convictions and sentences on direct appeal, and the Tennessee Supreme Court denied his application for permission to appeal. See id. On October 14, 2014, the Petitioner filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed.

The facts underlying the Petitioner's convictions were summarized by this court on direct appeal. See id. at *1-6. In short, on June 22, 2010, the Petitioner accompanied Daneile Jeffery to buy pain pills from the victim after Jeffery picked him up at a gas station. At the time, the Petitioner and Jeffery had known one another for a few months because the Petitioner's son and Jeffery's daughter had a child together. When they arrived at the victim's address, the Petitioner stayed inside the car while Jeffery went inside the victim's home. Jeffery came back outside to get her money from the car and just after she reentered the home, the Petitioner forced his way into the victim's house, brandished a handgun, and informed the victim that he was robbing her.

The victim said she had never seen the Petitioner before that day and described him as a six-foot tall African-American male who was wearing a white t-shirt. The Petitioner held his gun to the victim's head before taking her cell phone, seventy Percocet pills, and between $180 and $200 in cash. During the robbery, the victim recalled Jeffery asking the Petitioner, "Clint, why are you doing this[?]" Jeffery denied calling the Petitioner "Clint" the day of the robbery and could not recall what name, if any, she had used when speaking to the Petitioner inside the victim's home. Although the victim said that she had sold pain pills to Jeffery three times in the past, Jeffery stated that she had bought pills from the victim on fifteen prior occasions. Jeffery identified the Petitioner as the "gunman" to police, and the victim identified the Petitioner as the perpetrator from a photographic lineup. The Petitioner, during his interview with police, said he had never been to Bedford County, where the victim resided, and knew nothing about a robbery. He claimed he "dealt in cocaine" and not in pain pills.

At trial, Jeffery acknowledged that she had pending charges for theft and aggravated robbery for her role in the instant offenses and had prior convictions for obtaining a controlled substance by fraud, theft of property valued over $10,000, theft of property valued under $500, and introduction of contraband into a penal facility. She claimed that although she was guilty of buying prescription drugs, she was not guilty of robbing the victim. Jeffery admitted that she was addicted to pain pills, particularly Lortab, Oxycodone, and Percocet, and that she would go to the Petitioner's house and smoke crack cocaine with him.

The parties stipulated that the Petitioner was a convicted felon on June 22, 2010. The Petitioner admitted that he had been convicted of escape, attempt to commit a felony, burglary in the second degree, and receiving stolen property. He said he and Jeffery had been involved in an "intimate relationship" and that she had asked him for money for pills in the past. The Petitioner testified that he had never seen the victim prior to his court case and that he had never been to the victim's home. He claimed that he had been working on a neighbor's porch at the time of the alleged robbery, although he failed to mention this alibi to police during his interview.

**Post-Conviction Hearing.** The Petitioner testified that he discovered during trial or prior to trial that the victim had overheard Daniele Jeffery[1] calling the perpetrator by the name of "Clint" during the offenses. He claimed that trial counsel never investigated the existence of "Clint," even though he had told counsel that Jeffery had dated someone by that name. He admitted that he had never met "Clint," did not know "Clint's" last name or address, and was unaware if "Clint" had a criminal record. The Petitioner said he only knew that "Clint" was a man that Jeffery had dated and that Jeffery's daughter had told him that "Clint" was African-American. The Petitioner maintained that if trial counsel had located "Clint," it would have changed the outcome at trial because it would have cleared him of all the charges in this case. He admitted that even if trial counsel had tried to talk to Jeffery about "Clint," he could not have spoken to her without the permission of her attorney because Jeffery was charged as a codefendant in his case.

The Petitioner stated that he gave trial counsel a list of possible alibi witnesses, which included Jeffery's daughter; his brother, Tony Gant; Tonica[2] and Rodney Phillips, the two individuals for whom he worked on their porch; and Rodney Phillips's brother, whose name he believed was Jeremy Phillips. Despite this, he claimed the only people trial counsel developed as alibi witnesses were Tonica and Rodney Phillips. He acknowledged that Tonica Phillips testified as an alibi witness at trial and that her husband, who was present at trial, did not testify because of his failing health. The Petitioner conceded that Tonica Phillips could not testify that he worked on her porch the day the offenses occurred, only that he had been working on her property around the time of the offenses. However, he asserted that if trial counsel had interviewed the other witnesses on his list, the outcome of his trial would have been different because those witnesses could have confirmed his claim that he was working on the Phillips' porch at the time the offenses in this case were committed.

The Petitioner also claimed that trial counsel had failed to vigorously cross-examine the victim and Jeffery at trial. However, he admitted that trial counsel was able to get both the victim and Jeffery to admit that the victim was selling Jeffery pain pills. He also admitted that trial counsel was able to highlight the fact that the victim and Jeffery had differing stories as to how many times Jeffery had bought pills from the victim. Nevertheless, the Petitioner claimed that trial counsel failed to sufficiently attack the victim's and Jeffery's credibility during cross-examination based on these admissions. While he acknowledged that the victim and Jeffery provided different testimony as to how many times Jeffery had bought pills from the victim prior to the

---

[1] Although this witness's last name is spelled "Jeffries" in the transcript from the post-conviction hearing, we will spell her last name "Jeffery" in accordance with her own testimony at trial.

[2] While this witness's first name is spelled "Tamika" in the transcript from the post-conviction hearing, we will spell her first name "Tonica" in accordance with her own testimony at trial.

-3-

offenses, he claimed that trial counsel should have emphasized this discrepancy during cross-examination because it supported his theory that the victim and Jeffery were "covering up something."

Although the Petitioner claimed that Jeffery was bisexual and would engage in sexual acts in exchange for pills, he initially said he could not remember telling trial counsel this information. Later, he testified that he told trial counsel that Jeffery was bisexual, that he and Jeffery had engaged in sexual relations, and that Jeffery often traded sex with other individuals for drugs, but he claimed that counsel refused to question Jeffery about these issues at trial. The Petitioner said this evidence would have affected the outcome of trial because it would have damaged Jeffery's credibility and would have shown that Jeffery and the victim had a closer relationship than they claimed.

The Petitioner also asserted that the victim, the victim's son, and Jeffery had a "vendetta" against him because Jeffery's daughter was seeing the Petitioner's son while she was dating the victim's son. He claimed that because of his son's relationship with Jeffery's daughter, the victim, the victim's son, and Jeffery concocted a story about his committing the robbery. The Petitioner said he told trial counsel prior to trial that the victim and Jeffery blackmailed him, and trial counsel never investigated or questioned these witnesses about that information. Despite his claim that the victim was blackmailing him, the Petitioner admitted that the first time he had ever seen the victim was at his trial.

The Petitioner also asserted that if trial counsel had obtained the surveillance videotape from the gas station that was made the day of the offenses, it would have shown that Jeffery did not pick him up there before going to the victim's home, as she claimed. He admitted that he did not have this surveillance videotape to present at the post-conviction hearing but claimed that trial counsel failed to make a timely request for this videotape.

Trial counsel testified that he had been an assistant public defender for approximately seventeen years and had been licensed to practice law in Tennessee for close to twenty-five years. At the time he represented the Petitioner, he had handled thousands of felony cases in circuit court and was certified to represent defendants in capital cases.

Counsel stated that he reviewed the discovery with the Petitioner and met with the Petitioner about his case several times, including one or two times at the prison where the Petitioner was incarcerated. He said that he was familiar with the State's evidence and was prepared to defend the Petitioner at trial.

Trial counsel said the Petitioner never informed him that Jeffery was dating a man named "Clint" prior to trial. He acknowledged that, during an interview prior to trial, the victim told him Jeffery had referred to the perpetrator as "Clint" during the robbery. He said he did not try to locate "Clint" because the Petitioner never told him that Jeffery had an acquaintance named "Clint." Counsel explained that Jeffery was charged as a codefendant, and Jeffery's attorney refused to allow her to be interviewed prior to the Petitioner's trial.

Counsel said that he extensively questioned the victim about selling her pain pills and finally got her to begrudgingly admit that she was a drug dealer, which affected her credibility at trial. He said he also highlighted the inconsistencies between the victim's account and Jeffery's account of how often the victim sold pain pills to Jeffery. Moreover, trial counsel said he was able to get Jeffery to admit that she heavily used drugs and that she had a relationship with the victim, which affected Jeffery's credibility.

Trial counsel said that although he knew of the relationship between the Petitioner's son and Jeffery's daughter, the Petitioner never informed him that the victim, the victim's son, and Jeffery were blackmailing him because of that relationship. Counsel said that he fully explored the relationship between Jeffery and the Petitioner as well as the relationship between the Petitioner's son and Jeffery's daughter.

Counsel stated that the Petitioner and Jeffery had committed offenses similar to the instant crimes in Coffee County. However, he had successfully kept the evidence of the Coffee County crimes out of the trial in this case.

Trial counsel said the Petitioner gave him a list of possible alibi witnesses that included Tonica Phillips and her husband, Rodney Phillips. Although he interviewed Mr. and Mrs. Phillips, they could not confirm that the Petitioner was working on their porch at the time the offenses in this case were committed. Counsel said he called Tonica Phillips to testify at trial because she was the best alibi witness available. He said he did not have Rodney Phillips testify because he was in poor health and because he did not remember as much about the Petitioner's work on the porch as his wife.

Counsel said that he interviewed Dale Phillips, who he believed was Rodney Phillips's brother. Because Dale Phillips was incarcerated in another county on the day the offenses in this case were committed, he could not provide an alibi for the Petitioner. Trial counsel also interviewed the Petitioner's brother, Tony Gant, who was unable to confirm that he and the Petitioner had worked on the porch at the Phillips' home at the time of the offenses. After discussing the information he had gathered from the potential alibi witnesses, trial counsel said that he and the Petitioner decided to have only Tonica Phillips testify at trial because she was the best alibi witness, even though her testimony

was less specific than they hoped it would be. Counsel did not recall the Petitioner mentioning anyone by the name of Jeremy Phillips as a possible alibi witness and did not remember the Petitioner suggesting any other alibi witnesses to him.

Finally, trial counsel said he and the Petitioner discussed obtaining the surveillance videotape from the gas station where Jeffery claimed she picked up the Petitioner before going to the victim's home the day of the offenses. Counsel said he contacted the store to see if they had a videotape, but the videotape from that date had been recorded over because too much time had passed. Trial counsel explained that the offenses were committed on June 22, 2010, and that he was not appointed to represent the Petitioner until January 27, 2012. On July 15, 2015, the post-conviction court entered an order denying the Petitioner relief.

## ANALYSIS

The Petitioner contends that trial counsel provided ineffective assistance by failing to: (1) investigate the existence of an individual named "Clint" as the perpetrator; (2) investigate and question the victim regarding her drug use and drug dealing and Jeffery, his codefendant, regarding her drug use and history of trading sex for drugs; (3) investigate and question the victim and Jeffery regarding the nature of their relationship, the nature of the relationship between Jeffery's daughter and the Petitioner's son, and the nature of the relationship between Jeffery's daughter and the victim's son to show that he was the victim of a conspiracy; (4) adequately prepare an alibi defense; and (5) obtain the surveillance videotape from the gas station to impeach Jeffery's testimony. He asserts that but for these failures on the part of trial counsel, the outcome of his trial would have been different. The State argues that the post-conviction court properly denied relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation

-6-

marks omitted); <u>see</u> <u>Felts v. State</u>, 354 S.W.3d 266, 276 (Tenn. 2011); <u>Frazier v. State</u>, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); <u>Dellinger v. State</u>, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. <u>Lane v. State</u>, 316 S.W.3d 555, 562 (Tenn. 2010); <u>Grindstaff v. State</u>, 297 S.W.3d 208, 216 (Tenn. 2009); <u>Hicks v. State</u>, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. <u>Vaughn</u>, 202 S.W.3d at 116 (citing <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996) (citing <u>Strickland</u>, 466 U.S. at 688; <u>Baxter</u>, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Id.</u> at 370 (quoting <u>Strickland</u>, 466 U.S. at 694). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

<u>Id.</u> at 370 (citing <u>Strickland</u>, 466 U.S. at 697).

First, the Petitioner claims that trial counsel failed to investigate the existence of "Clint" as the perpetrator, but he failed to present "Clint" at the hearing. This court has held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." <u>Black v. State</u>, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a

witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Id. Regarding this issue, the post-conviction court noted: "Dan[eile] Jeff[ery] during her testimony denied ever stating the name of a person called 'Clint' during the robbery. There is little in the way of facts to support Petitioner's claim this person exists or could have been located. There was not even a last name of this person known." Because the Petitioner did not present "Clint" or any other witnesses showing that "Clint" was the perpetrator in this case, he has failed to show that trial counsel was ineffective as to this issue.

Second, the Petitioner asserts that trial counsel failed to vigorously cross-examine the victim about her drug use and drug dealing and Jeffery about her drug use and history of trading sex for drugs. He claims that a more forceful cross-examination would have made these witnesses, who identified him as the perpetrator, less credible. During the evidentiary hearing, the post-conviction court stated: "[Trial counsel] vigorously [questioned] several people in that trial. I've read the transcript. He hopped on them pretty good." At trial, the victim acknowledged that she had sold drugs to Jeffery several times in the past. In addition, Jeffery admitted that she was addicted to pain medication, that she had an extensive criminal history, that she frequently smoked crack cocaine, and that she had been charged as a codefendant in these crimes. Despite these admissions, the jury chose to accredit the victim's and Jeffery's testimony regarding their identification of the Petitioner as the perpetrator. The record shows that trial counsel effectively and vigorously cross-examined these witnesses, and the Petitioner has failed to show that additional cross-examination would have further eroded their credibility such that it would have changed the outcome of trial. Therefore, trial counsel's cross-examination of these witnesses was neither deficient nor prejudicial.

Third, the Petitioner maintains that trial counsel failed to investigate and question the victim and Jeffery regarding the nature of their relationship, the nature of the relationship between Jeffery's daughter and the Petitioner's son, and the nature of the relationship between Jeffery's daughter and the victim's son. He claims such evidence would have proven that he was the victim of a conspiracy. However, he has failed to provide one shred of evidence that a conspiracy existed. As the post-conviction court recognized, there was "no credible proof to this allegation," and even if this allegation were true, such evidence "would not have a reasonable probability of changing the outcome." Given the absence of such proof, the Petitioner has failed to show that trial counsel was ineffective as to this issue.

Fourth, the Petitioner claims that trial counsel failed to adequately prepare an alibi defense because he only presented the testimony of Tonica Phillips at trial. He claims that if his alibi witnesses had been allowed to testify, the jury might have found him innocent of the charged offenses. Significantly, the Petitioner failed to present any of these alibi witnesses at the post-conviction hearing. See Black, 794 S.W.2d at 757 ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Moreover, trial counsel testified that he interviewed several individuals before he and the Petitioner agreed that Tonica Phillips was the only person who could possibly testify as an alibi witness. In its order, the post-conviction court held that the Petitioner had presented no evidence of a feasible alibi defense:

> [Tonica] Phillips . . . testif[ied] that [she] had a ramp made for her disabled husband during the summer of 2010 and the Petitioner helped construct the same. Beyond that she could be no more specific. It did not appear from her testimony her husband was in any condition to testify. There was not further testimony presented at trial or [at] the [post-conviction] hearing which would indicate a viable [alibi] defense. Consequently, this issue has no merit and has not been shown it would have a reason[able] probability to change the verdict.

For these reasons, the Petitioner has failed to establish that trial counsel's performance regarding the alibi defense was deficient or prejudicial.

Finally, the Petitioner claims that trial counsel failed to obtain the surveillance videotape from the gas station, asserting that this footage would have impeached Jeffery's testimony that she picked him up at the gas station before going to the victim's home. However, the Petitioner failed to include this issue in his petition or amended petition for post-conviction relief, which resulted in the post-conviction court making no ruling on this matter for this court to review. Issues not included in a post-conviction petition may not be raised for the first time on appeal and are waived. See Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("[A]n issue raised for the first time on appeal is waived."). Regardless, the Petitioner failed to present this videotape at the post-conviction hearing, and trial counsel testified that he requested this footage after his appointment, but it was unavailable. Because the Petitioner has failed to establish that trial counsel's performance was ineffective, he is not entitled to relief.

## CONCLUSION

After reviewing the record and the relevant authorities, we conclude that the post-conviction court properly denied the petition for post-conviction relief. The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE